25-2075 Northern Iowa, United States v. Bobby Rhoden Mr. Bartley Good morning. My name is Petter Bartling. I am the attorney for Appellant Bobby Rhoden. The primary issue in Mr. Rhoden's case is a straightforward legal question regarding jurisdictional limits under 18 U.S.C. 1201. In this matter, the government proposes a theory of federal jurisdiction that has no limiting principle. Under the government's approach, the mere use of a car, without interstate travel, without commercial activity, and without any real connection to interstate commerce, is sufficient to confer jurisdiction over a purely local crime. Mr. Rhoden You know, you're preaching to the choir, at least with me on this one. I tend to agree with you as a matter of first principles, but I unfortunately have like 200 years of Supreme Court precedent to contend with. And if this, I get it. So the telephone is an instrumentality of interstate commerce, but I think that, you know, trains and planes clearly are. So what makes automobiles different? Because automobiles also take you, they don't have to, but they take you from one state to another. And maybe you could make an argument that an electric vehicle that can't go far enough to reach state lines maybe is not an instrumentality, but I don't know how we can do that under current case law. Justice Breyer Sure. So I think there's two questions that you're asking, Judge. The first question is, is Mr. Rhoden arguing that a car is not an instrumentality of interstate commerce? And no, that is not his argument. A car clearly can be an instrumentality of interstate commerce. Our position is that even if a car qualifies as an instrumentality, that designation alone cannot automatically establish Federal jurisdiction. And this Court recently took up that issue in the ARIF case, which I'll get to in just a moment. Justice Breyer Say it again. Justice Breyer The ARIF case, Judge. A-R-I-F, Muhammad ARIF, and that was a decision that this Court issued on October 2, 2025, with you being the author. There's three questions here that demonstrate why the government's theory of jurisdiction fails in Mr. Rhoden's case. The first is, what is the limiting principle that constrains the government's theory of Federal jurisdiction under 1201 here? And the answer is, there is none. The second question is, does the mere presence of an alleged instrumentality automatically establish Federal jurisdiction under the government's approach? The answer is, it does. And third is, how does this Court's decision in ARIF expose the flaws in the government's jurisdictional theory? The answer to that is, it confirms that attenuated connections, such as mere presence of an instrumentality, are insufficient to confer Federal jurisdiction. Now, take a look at the government's test as applied in this case at Mr. Rhoden's trial and the pretrial motions and the motions for judgment of acquittal. The government's position was that Federal jurisdiction exists whenever a defendant uses a car. This is their position regardless of whether the conduct is entirely local, regardless of whether the car crosses State lines, and regardless of whether there is any actual connection to interstate commerce. If that is a jurisdictional test that this Court sanctions, then there is no jurisdictional test. What about, and we use this in the gun cases, and I think the drug cases, too, but I'm not positive. I know it's in the gun cases, that the car was necessarily made somewhere else and it traveled over State lines to get to the dealership where it was bought. That would, at least under our gun cases, that would be sufficient. Is that true here? Well, first of all, I don't concede that that is true. But second, in this particular case, if you look at the record, if you take a standard gun case, 922G or whatever it might be, the government always brings in somebody to say that this weapon was manufactured out of State, it traveled across State lines to get here, and that's how it got into the defendant's hands. In this particular case, the record contains no such evidence. There was no discussion of whether Mr. Rhoden's vehicle was manufactured in another State, whether it came from another State to the State of Iowa at any point in time. That was overlooked. And the reason it's overlooked is what I'm talking about here. That buttresses Mr. Rhoden's argument. His argument is this was a presumptive, self-proving jurisdictional notion by the government. The mere use of an instrumentality was sufficient to establish jurisdiction. That was their argument. And one of the things that I think is critical for you to look at here, Judge, is if you look at the language of 18 U.S.C. 1201a.1, that provision talks about a person is willfully transported in interstate or foreign commerce, comma, regardless, and then it lists a series of conditions, one of which is an instrumentality. Then you drop down to B.1 of the same statute, and that section talks about a rebuttable presumption being created when a person who is traveling in interstate or foreign commerce is not released until a period of 24 hours later. I would suggest to the Court that that suggests that there is a presumption that any time travel is purely local, using an instrumentality such as a motor vehicle, it is not something that confers Federal jurisdiction based on the strict language of the statute. So regardless of the 200 years of jurisprudence, and I will respectfully argue that the second category of Lopez would include Mr. Roden's argument, but regardless of that, the statute gives us clear direction on this point. And it's much like the ARIF decision. Although that was a sex trafficking case under 1591a, the difference was Judge Loken pointed out in the opinion that the car, and there were three layers of stacked inferences the government used there, not one like in Roden's case, but Judge Loken pointed out that the car's presence alone, or what he called the mere presence alone, was insufficient. There needed to be some effect per the statute. And I would argue that although the particular word effect isn't in 1201a1 or b1, the notion of it and how it plays out with the interrelationship between a1 and b1 clearly establishes that it's got to be more than a person gets in a car, as in Roden's case, at his home, drives to a shop, which is within a few miles away, and returns. That's the complete gamut of the interstate commerce in this case. But what about the idea, and I think this underlies the instrumentalities, it is infinitesimally small chance that this did not travel in interstate, this car did not travel in interstate commerce at some point. And I'll draw a comparison. It's a little inept, but it's kind of like what the Fourth Amendment does with the automobile exception. What it says is we are going to assume because it is mobile and can move around that you don't need a warrant. And I think the same presumption kind of comes here, where the chances are, I mean, they're astronomically small that this didn't travel in interstate commerce. Well, I think, assuming arguendo that this car did travel in interstate commerce, the record doesn't demonstrate that as a matter of fact. But number two, I think that if we take that question in light of the ARIF opinion, what we need to do is ask this. Did the court reject the reliance on a car exclusively as a basis for Federal jurisdiction? And the answer in ARIF was yes, the court did reject that. And if you recall, and I know you do, in ARIF the government argued that it was a car, money, and local conduct, that those stacked together conferred jurisdiction. This Court rejected that because it said that the potential that a car could affect interstate commerce wasn't enough to confer jurisdiction. Rodin's case is weaker than ARIF, not stronger, because we only have one of those factors. I take it you think the Eleventh Circuit in Bryan was wrong. I think that this Court ought to follow its own precedent and that cases where the out-of-circuit cases that talk about instrumentality, in my professional opinion, do a self-effectuating analysis, and it is akin to the 922G analysis, if a car, then jurisdiction. And I think this Court owes it to litigants who have committed what are otherwise purely local crimes to ask, does this implicate something that the Constitution thought ought to be implicated? Or does this extend way past that into a general police power? And in this particular case, I can't think of a more factual, poignant scenario where it is a general police power. This was a local kidnapping, and he never left Woodbury County, Sioux City, or the state of Iowa. No one contests that. There is no dispute of that in the record. The complaining party, the law enforcement officers all said that. And if you recall the nature of this indictment, this indictment originally came out as a 922G. It wasn't until the indictment was superseded that a kidnapping charge was added. If you look at the record very carefully, all of the officers said, when we made this apprehension, it was for a domestic dispute, meaning that they believed that the crime that had been committed was felon in possession of ammunition under 922G and a local crime. There is no explanation in this record as to why traveling this short distance, and the distance doesn't really matter, but traveling a short distance and then this person freeing herself turns a local crime into a federal crime unless this court says just the mere presence of a car alone confers general police powers on the federal government. Mr. Rodin's argument is, it does not, it cannot, and if it does, then that obliterates any meaningful federal jurisdiction limit. I'm out of time. Thank you. Thank you, sir. Mr. Fairchild? May I please the court? Good morning, colleague. My name is Ford Fairchild, and I represent the United States in this matter. The defendant's argument conflates the three distinct Lopez factors, compresses them on top of one another, and makes totally redundant the instrumentality category. Lopez, of the three distinct categories, while there is often overlap between those three categories, each is separate and dispositive. The second of the three is what's relevant here, not the third. The second of the three expresses Congress's power to regulate and protect the instrumentalities of interstate commerce, even though the threat may come wholly from interstate activities. What about, you know, I get that for trains and planes, right? Because we, you know, trains have the cars that, you know, carry things like oil and gas and items across the country. Planes, you've got FedEx, and I guess you have FedEx cars, too, I mean, or trucks, but some of these, it feels a little different when you're starting to talk about a car, especially one that's not a FedEx or an Amazon Prime car. Just like railroad cars run on tracks, cars, automobiles, more specifically, run on roads. And commercially, everything that can be done by trains is now being done as a practical matter also by trucks. That's why on the, that's why during rush hour, the roads are crushed with not just FedEx, but every kind of truck. But is everybody who's in a car, most people who are in a car, are they doing commerce? Clearly the Amazon Prime truck is, perhaps the plumbing van is, perhaps, but the average person commuting to and from work, you know, maybe you're never conducting commerce in your particular car. You're not delivering papers, you're not, you know, you're just going from one place to another. So first I would nudge you back into the kind of experience of this and other courts, where you look at the category, not the members of the class, and when you look at the category of automobiles, it's, they're unquestionably instrumentalities. But let's talk a little bit about the example you raised earlier, about the car in this case, and also answers your question directly. It is fantasy, or at least vanishingly small, the number of cars that are not actually traveling in interstate commerce or affecting interstate commerce. But I don't want to make those arguments, because I don't have to, because this is a Category 2 case, an instrumentality case. And cars, automobiles, are instrumentalities of interstate commerce. That ends the decision. And it's the defendant's confusion on this that has resulted us in being, us being in here today. He keeps arguing to this court, well, it didn't affect commerce. It wasn't interstate travel. Maybe. The record doesn't have any information in that. Not because the government failed, but because this case, 1201, is built upon Congress's power to regulate instrumentalities. Instrumentalities, as a class, per se, include automobiles. Therefore, there is no individual assessment needed. What about the Timkovich opinion from the 10th Circuit? Motor, was it motor vehicles, I think, was the, and so you, you go, you would say it's inapplicable because of the lawnmower and everything else. Yes, and when you read that case, he does just, the author of the opinion does just what the defendant does. The author of the opinion talks about affecting interstate commerce, which the government doesn't have to do when it's proving that instrumentality is being regulated and built upon. The 10th Circuit's idea about, golly gee, couldn't a drive to the park with my child be not affecting interstate commerce? Maybe. You'd like to know, perhaps, where the car was made and what was fueled on. Not issues here, because here, 1201 is built on the instrumentalities. And, of course, you pick on another thing that I delight in that case. He talks about motor vehicles, not automobiles, making the distinction that a motor vehicle includes an elevator, not an automobile. Well, automobiles are, per se, part of a class of things that are an instrumentality of interstate commerce. Elevators, wheelchairs, scooters are not. Apples and oranges. Do you think it's just a presumption, like I talked about before, kind of like the Fourth Amendment, where the court's just saying, you know, it's just really a small chance, and we're not going to litigate each one of these things. So we're going to say, as a class, instrumentalities satisfy the commerce requirement. Sure, it's judicial economy. The idea that virtually every car in America, automobile, yeah, virtually every automobile in America, certainly those in Iowa, are going to have either affected interstate commerce a la 922G, or have crossed a state line, which is very possible in Sioux City, Iowa, as it straddles the three states. But those are one in three factors. They're not the two category, which we're talking about here. So yes, I think there's a judicial economy issue. That means we're not going to look at the individual members of a class. Instead, we're going to govern the class, and the class of automobiles here is an instrumentality of interstate commerce. It's really important to remember that Lopez, gun-free zone, Morrison, violence against women, Taylor, the Hobbs Act, and Areth, all are category three cases. Here, the government did not put on evidence that the car was made in Detroit and bought in Iowa. Here, it did not put on evidence that the car was fueled with something other than the imaginary 100% ethanol. Rather, what the government did here is established it was an automobile, and automobiles, along this court and other courts' opinions, well, let me be careful there, this court has not said cars are an instrumentality, but it's implied that in its other decisions. But that's what the government argued here. Automobiles are part of a class. Automobiles are, per se, instrumentalities of interstate commerce. Now, I'm not shrinking from the fact that this court hasn't spoken to it directly because this court has implied this result. One of the points of my citing quorum is this court says, no, no, no. Once you have checked the box on N category, you don't have to go on with other categories. And then to return to your point about 922G, 922G is based on the third category of Lopez, affecting interstate commerce. Maybe we could have charged it that way. Well, no, I don't think we could have because 1201 talks about instrumentalities. So, but I'm not here to make Category 1 or Category 3 arguments. That's what the defendant wants to do, but that's a red herring. Because here, 1201 is solidly built on Category 2 of  What about a bike? Let's suppose, it's hard to kidnap somebody on a bike, but suppose that happened. Well, so we would have to look to see if bikes are instrumentalities of interstate commerce. And I can point you to multiple cases saying automobiles are. I haven't thought of the issue when it comes to a bike. But this case really involves more important facts than the defendant would have you believe. First of all, she is coaxed out of the domestic abuse shelter the day before the car. So the car is used the day before what you see on Video 102. So this is a longer, more elaborate use of the car than the defendant would have you believe. It's not as if the horrible thing we see in 102, him dragging her across the concrete and throwing her over the back, that's not the kidnapping all by itself. And it's really important. This is not a usurpation of, you know, the police power of the states. The kidnapping or whatever he did to her is whatever it is in state law. What the statute 1201 criminalizes is the use of the car, the automobile, to further that crime. And by the way, not to be cute, but kidnapping, though this was certainly violent, is not a crime of violence. So it's not, it's not quite as he states it. But all of that, we get kind of lost at the important part here. Here, we have a horrible criminal act that is furthered by an instrumentality of interstate commerce. That is mine run, second category of low pads. And this court has decided in Corn and in Trotter and in other cases that once you've checked the box on the category, your analysis is concluded. You don't have to go on to see if it also affected interstate commerce or also if it crossed the state line. This is a category two case. And now I'll ask you two. If Corn said that phones are the instruments of interstate commerce because they use this integrated system, aren't automobiles the same? Aren't they the instrumentality, like a train car, like an airplane? Of course they are. But the analogy would be, you have to, I think the opposing counsel would say, well, the telephone lines cross state lines, right? That's why it's an instrumentality of commerce. But I think opposing counsel would say, unless your car has been on the interstate, there's no analogy there. But his argument, were he to argue that, would fail for the reasons that Corn cited. It doesn't matter if you use the entirety of the aggregated system, including the bits that cross state line. A wholly intrastate use of that system is sufficient. Telephones are instrumentalities, box cars are, passenger rail cars are, automobiles are. This court hasn't yet said it, but its logic suggests it. Lopez 2 is a straight, a straightly applied here. And of course, the other circuits to consider it, with the exception of the 10th Circuit, agree with the government's position. And I'll say even the 10th Circuit, there's a diversity of opinion in the 10th Circuit, though the most recent case is the most harmful to the government. My time has expired. I'd be delighted with questions. I will otherwise take my leave. Thank you. Want a minute? I take it that's a rhetorical question, Judge. You can't ask a lawyer if he wants a minute, because he'll always say yes. Judge. Not always. You know, I think what we just witnessed here, at least in my opinion, is the point that I've been making from the inception of this case. And that is this jurisdiction by fiat that the government believes is here. Essentially, what Mr. Fairchild just argued was that any movable object becomes a basis for jurisdiction. This Court's analysis, or the District Court's analysis, is simply a pro-forma exercise. It is not substantive. And if that is the ruling of this Court No, he says it has to be an instrumentality. He says it has to be an instrumentality. And a wheelchair probably isn't, and a bike. Well, that's my point. But he's saying a car is an instrumentality, and then That's the Supreme Court's point. Well, in most of those cases, Judge, with due respect, they are cars in which the defendant is also affecting something else. He's driving a car, perhaps, across state lines. He's using a cellular telephone at the same time. He has done some other action that affects interstate commerce. And that's why it's a dangerous analysis to No. I'm asking you to resist this analysis that says this is simply a Lopez 2 or 3, because those are about constitutional boundaries. That's what the boundaries were about in Lopez. Thank you. Thank you, counsel. The case has been thoroughly briefed, and the argument's been helpful. We'll take it under advisement.